UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| CHRIS CANNON, on behalf of himself and those similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ARCSTREAM, INC. and COX ) COMMUNICATIONS NCC, INC., ) ) Defendants. ) ) | Civ. Act. File No. 1:15-cv-00203-MW-GRJ |

## BRIEF IN SUPPORT OF DEFENDANT COX COMMUNICATIONS NCC, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION

**COMES NOW** Defendant Cox Communications NCC, Inc. ("**Cox**"), by and through its attorneys, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, respectfully moves the Court to compel arbitration and to stay the trial of this action until arbitration has been had. In support thereof, Defendant Cox respectfully shows the Court as follows:

## I.  RELIEF REQUESTED

Plaintiff Chris Cannon's ("**Plaintiff**" or "**Cannon**") claims against Defendant Cox are subject to a binding arbitration provision contained in a Contractor Agreement between Plaintiff and Defendant Arcstream, Inc. ("**Arcstream**"). For the reasons set forth below, Cox, although a nonsignatory to

the Contractor Agreement, is entitled to enforce the arbitration provision contained therein against Plaintiff pursuant to binding authority in the Eleventh Circuit. Accordingly, Defendant Cox requests that the Court enter an order which: (a) stays the trial of this case; and (b) compels arbitration of Plaintiff's claims against Cox.

## II. PROCEDURAL POSTURE AND RELEVANT FACTS

Cox is a cable television and internet service provider that contracts with Arcstream to provide cable and internet installation services to Cox's customers. Plaintiff is the principal/member of a company called Audioworxx, LLC, and entered into a Contractor Agreement [Dkt. 5-1] on behalf of his company, Audioworxx, LLC, to provide telecommunications equipment installation services for Arcstream. Thus, Plaintiff's company provides cable and internet installation services to Arcstream, the installation company, which, in turn, provides cable and internet installation services to Cox's customers.

Plaintiff filed his original Complaint [Dkt. 1] against Arcstream on September 22, 2015 alleging violations of the Fair Labor Standards Act (the "**FLSA**"). Cox was not named as a Defendant in the original Complaint. Instead, Plaintiff alleged that he worked for only Arcstream.

On October 20, 2015, Arcstream filed a Motion to Compel Arbitration and to Stay Proceedings ("**Motion to Compel**") [Dkt. 5].[1] The Contractor Agreement

---

[1] Arcstream attached a copy of its Contractor Agreement with Audioworxx, LLC to its Motion to Compel. [Dkt. 5-1.]

2

contains an arbitration provision including a class and collective action waiver, and Arcstream moved the court to compel Plaintiff to bilateral (as opposed to collective) arbitration with Arcstream. (*See* Mot. to Compel 1-2.)

On November 3, 2015, after realizing that his frivolous class action claim was doomed as to Arcstream, Plaintiff filed the Amended Complaint [Dkt. 6] adding Cox as a defendant in a desperate attempt to keep his collective action lawsuit alive. Other than adding a paragraph identifying Cox's registered agent and adding a single paragraph alleging that Cox was the Plaintiff's "joint employer," the factual allegations of the Amended Complaint remain unchanged from the original Complaint. Plaintiff simply did a find-and-replace for the word "DEFENDANT" and changed it to "DEFENDANTS." (*Compare* Compl. ¶ 13 (alleging that Arcstream back charged Plaintiff for unacceptable work) *with* Am. Compl. ¶ 15 (alleging that "DEFENDANTS" back charged the Plaintiff for unacceptable work)).

Subsequently, on November 3, 2015, Plaintiff filed his response to Arcstream's Motion to Compel in which he acknowledged that his FLSA claim against Arcstream would have to be arbitrated in a bilateral (as opposed to class or collective action) arbitration as a result of the Contractor Agreement. (*See* Pl.'s Resp. to Mot. to Compel Arbitration, pp. 1-2 [Dkt. 8].) Notably, Plaintiff did not challenge the authenticity of the Contractor Agreement. (*Id*.) However, he did ask

the Court not to compel the action with Cox to arbitration, claiming that Cox was not a party to the Contractor Agreement. (*Id*.)

On November 4, 2015, the Court issued an order staying the action and compelling Plaintiff to arbitration with Arcstream. (*See* Order Staying Action Against Arcstream, Inc. & Compelling Arbitration 1-2 (Nov. 4, 2015) [Dkt. 10].) In the Order, the Court indicated that it would reserve judgment as to whether the action against Cox must also be compelled to arbitration. (*Id*.) For the reasons set forth below, Cox now moves the Court to compel the Plaintiff to arbitrate his claims against Cox, as well.

### III.  ARGUMENT AND CITATION OF AUTHORITY

#### A.  Standard of Analysis Under the Federal Arbitration Act and Applicable Florida Law

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "**FAA**"), governs the enforceability of any arbitration agreement in a contract evidencing a transaction involving commerce. Section 2 of the FAA addresses the Act's applicability to written contracts and provides: "[a] written provision in…a contract involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and

4

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2.

The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941 (1983); *Witt v. D.R. Horton, Inc.*, No. 8:08-CV-2414-T-33EAJ, 2009 WL54902, *1 (M.D. Fla., January 7, 2009) (compelling arbitration). The FAA reflects "a liberal federal policy favoring arbitration agreements." *See Moses H. Cone*, 460 U.S. at 24. As the Supreme Court has noted, the purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements … and to place [them] upon the same footing as other contracts." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995).

The federal policy in favor of arbitration is so significant that the Supreme Court requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration…." *See Moses H. Cone*, 460 U.S. at 1, 24-25; *see also Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014). <u>This includes resolving doubts as to whether non-signatories can be bound to an</u>

arbitration agreement in favor of arbitration.[2] *See Arthur Andersen, LLP, v. Carlisle*, 556 U.S. 624, 624-625 (2009). Similarly, Florida law also contains "a strong presumption" in favor of arbitration. *See Pysarenko v. Carnival Corp.*, No. 14-20010-CIV, 2014 WL 1745048, *1 (S.D. Fla. April 30, 2014).

When deciding whether parties should be compelled to arbitrate, the Court should apply the law of the state where the arbitration agreement was entered into in order to determine its enforceability under the FAA. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Under Florida law, there are three factors to consider in determining whether to compel arbitration: (1) whether a valid arbitration agreement exists; (2) whether there is an arbitrable issue; and (3) whether the right to arbitrate has been waived. *See Shetty v. Palm Beach Radiation Oncology Assocs. Sunderam K. Shetty, M.D., P.A.*, 915 So.2d 1233 (Fla. 4th DCA 2005). All of these factors are met here for the reasons set forth *infra.*

---

[2] In *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), the Eleventh Circuit cited three specific grounds under which non-signatories to a contract may compel arbitration against a signatory: equitable estoppel, agency or related principles, and third-party beneficiary. The grounds for allowing Cox, a nonsignatory to the Contractor Agreement, to enforce the arbitration provision against Plaintiff are more specifically discussed in Section III(B), below.

**B.   The Arbitration Provision in the Contractor Agreement Applies to Plaintiff's Claims Against Cox, Even Though Cox is a Nonsignatory to the Contractor Agreement**

As to the first factor, it is undisputed that a valid arbitration agreement exists.[3] However, as a threshold matter, it must first be determined whether Cox has the right to enforce the arbitration agreement as a nonsignatory to the Contractor Agreement. Under the recognized doctrine of equitable estoppel, and based upon Plaintiff's own claims, it is clear that Cox has the right to compel arbitration.

**1.   Plaintiff's Claims Against Cox and Arcstream Involve Allegedly Interdependent and Concerted Misconduct**

The Eleventh Circuit has taken the lead in applying equitable estoppel principles to allow a nonsignatory to an arbitration agreement to enforce that agreement under the "intertwined claims" basis. *See Garcia v. Mason Contract Products, LLC*, No. 08-23103, 2010 WL 520805, *10 (S.D. Fla. February 9, 2010). The Eleventh Circuit has expressly held that a nonsignatory to a contract may compel arbitration against the signatory when "the signatory [to the contract containing the arbitration clause] raises allegations of…substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *See MS Dealer*, 177 F.3d at 947 (compelling parties to arbitration even though one party was nonsignatory to

---

[3] Plaintiff has acknowledged in his Response to Arcstream's Motion to Compel [Dkt. 8, pp. 1-2] that the arbitration agreement is valid and enforceable, thereby satisfying element (1) of the analysis.

7

arbitration agreement where claims were based on the same facts and "inherently inseparable") (citation omitted)[4]; *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d DCA 2010). This is exactly what Plaintiff has done here assuming that his allegations are true for the sake of this motion only.

For example, Plaintiff asserts that both Cox and Arcstream are in violation of the FLSA, jointly and as the result of some "willful and knowing failure" by both Defendants to properly compensate Plaintiff. In fact, the Amended Complaint specifically alleges that, "[a]t all relevant times, Cox was a joint employer of Plaintiff and upon information and belief, Cox and Arcstream had an integrated or common enterprise." (Am. Compl. ¶ 11.) Accordingly, under Plaintiff's theory, the allegedly improper behavior by the Defendants was committed by both of them, acting in concert—if the Plaintiff does not have a claim against Arcstream, he has no claim against Cox, and *vice versa*, under the joint employer theory.

In *Moldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 WL 2407086, *3-4 (M.D. Fla. June 3, 2013), the plaintiff made allegations against the defendants almost identical to those alleged by the Plaintiff in his Amended Complaint in this case, including very broad allegations against both defendants.

---

[4] The Court in *MS Dealer* also held that a party may not avoid broad language in an arbitration clause by attempting to, for example, cast its complaint in tort rather than contract. *See id.* at 948 (citation omitted). Thus, a party cannot use semantics to circumvent what is otherwise a binding arbitration agreement. Similarly and analogously, here, Plaintiff should not be permitted to circumvent the arbitration agreement by amending his Complaint to add Cox as a defendant only after he realized that his claims against Arcstream were subject to arbitration. The arbitration agreement in the Contractor Agreement also plainly and unequivocally waives class and collective claims. Plaintiff's eleventh hour amendment to the Complaint to add Cox is therefore plainly designed to circumvent the arbitration agreement and is improper.

8

For example, in *Moldonado*, the plaintiff alleged that he "worked for *Defendants* in excess of forty (40) hours within a work week," that "*Defendants* failed to compensate Plaintiff at a rate of one and one-half times Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week," that "*Defendants* failed and continue to fail to maintain proper time records as mandated by the FLSA," and the like. *See id.* The Court held that because there was no independent claim against any of the Defendants alone, the claims raised issues of "concerted conduct" between all of the Defendants and the nonsignatory to the arbitration provision was, therefore, entitled to enforce it against the plaintiff. *See id*.

    Similarly, in this case, the Amended Complaint is equally as general and broad, alleging, for example, that "Plaintiff worked for *Defendants* for approximately one year…" (Am. Compl. ¶ 12); "*Defendants* failed to pay Plaintiff overtime pay for the overtime he worked" (Am. Compl. ¶ 16); and "*Defendants'* failure to properly administer a scheme of compensation, including, but not limited to, actual time, overtime and/or comp time compensation violates the overtime provisions of the FLSA and the regulations thereunder (Am. Compl. ¶ 29). In the face of such allegations of concerted conduct against both "Defendants" in the Amended Complaint, Cox is entitled to enforce the arbitration agreement against Plaintiff. *See also Matthews v. Bellsouth Telecommunications, Inc. d/b/a/ AT&T*

*Alabama*, 764 F.Supp.2d 1272, 1282 (N.D. Ala. 2010) (holding that where claims against a nonsignatory to an arbitration agreement are "intimately founded in and intertwined with" the claims made by the party resisting arbitration against an entity that is a party to the agreement, the nonsignatory is entitled to enforce the arbitration agreement).

It also, therefore, follows that (again, assuming that Plaintiff's legal theory is correct), Arcstream is a necessary party to Plaintiff's claims against Cox. If Arcstream and Cox are alleged to be joint employers and involved in an "integrated enterprise" for FLSA purposes, a determination of both Defendants' liability depends upon the liability of the other. It is, therefore, essential that both Defendants are involved in the arbitration proceeding. "Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'" *See Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976).

Additionally, Cox has an indemnification agreement with Arcstream whereby Arcstream is required to reimburse Cox for its cost of defense and any damages incurred in this action. Thus, the joint employment question cannot be resolved without significantly impacting Arcstream, which, therefore, makes both

Arcstream and Cox necessary parties to any proceeding.[5] This is precisely the type of "interdependent" relationship which entitles a nonsignatory, such as Cox, to enforce a contractual arbitration provision.

### 2. Plaintiff's Claims Also Arise from the Defendants' Alleged Joint Failure to Pay Plaintiff As Agreed Under the Terms of the Contractor Agreement

The Eleventh Circuit has also recognized that a nonsignatory to a contract may compel arbitration under that contract when the signatory to the contract containing the arbitration provision "must rely upon the terms of the written agreement in asserting [its] claims" against the nonsignatory. *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993).

Here, Section 6 of the Contractor Agreement sets out the terms of Plaintiff's payment by Arcstream for services rendered to Arcstream by Plaintiff and provides, in relevant part, that Plaintiff will be paid "on a weekly basis in accordance with the published fee schedule." Plaintiff is, therefore, effectively alleging by asserting a joint employer theory that he was not paid in accordance with the Contractor Agreement by both Arcstream and Cox. Under Plaintiff's theory, both Cox and Arcstream are allegedly part of a common enterprise and both are liable for the alleged failure to pay Plaintiff overtime (i.e., to pay Plaintiff in accordance with the contractually agreed-upon "published fee schedule," which

---

[5] If the Court ultimately determines that Cox is not entitled to enforce the arbitration provision against Plaintiff and Arcstream cannot be joined in the pending litigation because of its arbitration agreement, the lawsuit should be dismissed for inability to join a necessary party.

provided that Plaintiff would be paid a certain amount for each task performed). As a result, because Plaintiff is relying, at least in part, upon the payment terms of the Contractor Agreement to maintain his claims against both Defendant Cox (a nonsignatory) and Defendant Arcstream (a signatory), Cox is entitled to enforce the arbitration provision of the Contractor Agreement, as well.

Even if this Court were to determine that Plaintiff does not directly rely upon the terms of the Contractor Agreement in asserting his claims against Cox, it is sufficient that the Plaintiff's claims presume the existence of a relationship with Cox. The Court faced a similar issue in the *Garcia* case, in which the plaintiff asserted claims against two defendants for violation of the FLSA. *See* 2010 WL 520805 at *11-14. In attempting to avoid enforcement of a binding arbitration provision by the nonsignatory defendant, the plaintiff argued that he had not asserted any breach of contract or other claim arising out of his employment agreement with the signatory defendant against the nonsignatory defendant. *See id.* at *11. The plaintiff, therefore, attempted to argue that he was not relying upon the agreement containing the arbitration clause in asserting his claims against the nonsignatory, and the nonsignatory, therefore, was not entitled to enforce the arbitration provision against him. *See id*. The Court disagreed, however, and held that although the plaintiff's claim did not "directly arise" from the arbitrable employment agreement with the signatory defendant, his FLSA claim against the

12

nonsignatory defendant naturally presumes the existence of an employment relationship with that defendant. *See id.* at *14. Otherwise, there would be no basis for the plaintiff's FLSA claim. The Court, therefore, held that the nonsignatory defendant was entitled to enforce the arbitration provision, despite the fact that the plaintiff's claims were not directly based on the applicable contract. *See id.*

### C. Plaintiff's FLSA Claim is Within the Scope of Arbitrable Issues in the Contractor Agreement

The arbitration provision signed by Plaintiff in the Contractor Agreement covers

> [a]ny controversy, dispute or claim aris[ing] between the Company [Arcstream] and Contractor (or any of its principals or owners), including, without limitation, any controversy, dispute or claim relating to or arising out of the subject matter of this Agreement (including termination of the relationship between the parties), the relationship of the Company with Contractor or its principals/owners, any federal, state or local law or ordinance, or any common law claims such as assault, battery, invasion of privacy, wrongful termination, wrongful arrest or imprisonment, intentional or negligent infliction of emotional distress, negligent hire/supervision or defamation.

(Contractor Agreement 6 [Dkt. 5-1].)

Plaintiff's claim that he was not paid overtime in violation of the FLSA is a statutory claim between himself and both Cox and Arcstream (under his joint employment theory), and he, therefore, cannot credibly argue that it falls outside the scope of his arbitration agreement. *See, e.g.*, *Delano v. Mastec*, No. 8:10-CV-

13

320-T-27MAP, 2010 WL 4809081, *3-5 (M.D. Fla. Nov. 18, 2010) (compelling FLSA claims to arbitration).

This fact coupled with binding precedent wherein the Eleventh Circuit has implicitly approved arbitration of FLSA claims warrants arbitration in this case. *See Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, *4 (M.D. Fla. Aug. 7, 2007) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Bolamos v. Globe Airport Sec. Servs., Inc.*, 64 Fed. App'x 743 (11th Cir. 2003) (affirming district court's finding that arbitration applies to statutory claims such as the FLSA); *Montes v. Shearson Lehmon Bros., Inc.*, 128 F.3d 1456, 1458 (11th Cir. 1997) (finding that the district court's referral of FLSA claims to arbitration was proper).

### D. No Waiver of Cox's Right to Compel Arbitration Has Occurred

In the context of a party's right to compel arbitration, "[t]he essential question is whether, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *See Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n, Inc.*, 143 So.3d 1015, 1017 (Fla. 3d DCA 2014). Actions such as active participation in a lawsuit (including filing an answer that does not assert the right to arbitrate, moving for summary judgment, or conducting discovery) are inconsistent with the right to compel arbitration; however, the filing of pre-answer

motions, particularly when filed simultaneously with the motion to compel arbitration, does not waive the right to compel arbitration. *See id*.

Here, this Motion to Compel and the accompanying Motion to Dismiss filed by Cox are the only actions Cox has taken in this case. Cox has not participated in any other way in this action, nor has it taken any action inconsistent with its right to arbitrate. Accordingly, Cox has not waived its right to compel arbitration.

### E. The Court Should Compel Plaintiff to Pursue His Claims, if They are Not Dismissed, Through Arbitration and Stay the Case Pending Arbitration

Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. FAA Section 3 states that the Court "shall" stay the case pending arbitration, indicating that a stay is mandatory where requested. *See id.* Accordingly, Cox requests that the Court stay this action pending the completion of arbitration.

### IV. CONCLUSION

For the foregoing reasons, Defendant Cox respectfully requests that the Court enter an order enforcing the arbitration agreement in the Contractor

Agreement as between Plaintiff and Cox, and order the parties to resolve this dispute through binding arbitration. Defendant Cox also requests that, pursuant to FAA Section 3, the Court immediately stay the litigation of this case pending the completion of arbitration.

Respectfully submitted this 3d day of December, 2015.

**PHELPS DUNBAR LLP**

By: *s/ John Phillips*
John E. Phillips
Florida Bar No. 823155
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550
(813) 472-7570 (fax)
john.phillips@phelps.com

- and -

**CHAMBERLAIN HRDLICKA
 WHITE WILLIAMS & AUGHTRY**

Annette A. Idalski
Georgia Bar No. 005559
F. Beau Howard (*Pro Hac Vice Pending*)
Georgia Bar No. 142641
191 Peachtree Street, N.E., 34th floor
Atlanta, GA 30303-1747
(404) 658-5386
annette.idalski@chamberlainlaw.com
beau.howard@chamberlainlaw.com

*Counsel for Defendant Cox Communications NCC, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that the foregoing memorandum, excluding the signature block and style, comprises 3,539 words as calculated by the word count feature of the word processing program used to prepare the memorandum.

By: *s/ John Phillips*
John E. Phillips

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 3d, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Matthew W. Birk
The Law Office of Matthew Birk, LLC
309 Northeast First Street
Gainesville, Florida 32601
mbirk@gainesvilleemploymentlaw.com

Patrick Michael Muldowney
Baker & Hostetler LLP
Sun Trust Ctr. – Suite 2300
200 S. Orange Avenue
Orlando, Florida 32801
pmuldowney@bakerlaw.com

By: *s/ John Phillips*
John E. Phillips